## Margaret Harris *vs.* Inhabitants of Marblehead.

A building committee of the selectmen of a town which had not been divided into territorial school districts selected a lot of land for a school-house, and, on the refusal of H., the owner, to sell it, applied to the selectmen to call a meeting of the town. At such a meeting, called "to see if the town will authorize the selectmen to select at their discretion a school-house lot," it was voted, "that the selectmen be and they are hereby authorized to select at their discretion a school-house lot and lay out the same, from the land of H. heretofore selected by the town." *Held,* that this was not a sufficient designation of land by the·town to authorize the selectmen to select out of it a school-house lot, under *St.* 1848, c. 237.

*It seems,* that a notice that the selectmen, in accordance with a vote of the town, will on a certain day lay out and assess damages for the taking of a lot of land, but not stating that it is for a school-house, is insufficient.

A town which, against the owner's will, illegally takes a lot of land for a school-house lot, and erects·a school-house thereon, cannot be allowed anything for improvements, under the Rev. Sts. *c.* 101, §§ 19, 20.

WRIT OF ENTRY by the widow and devisee of Ebenezer R. Harris to recover a lot of land in Marblehead. Plea, nul disseisin. Trial before *Merrick,* J., who reserved the following case for the decision of the full court:

The plaintiff gave in evidence her husband's title and his· devise to her. The tenants claimed title by virtue of proceedings under *St.* 1848, *c.* 237, and the acts in addition thereto, authorizing towns to take lands for school-houses; there being no territorial school districts in the town. The records of the town were put in evidence, showing a call of a meeting of the legal voters of the town on the 30th of July 1853, "to· see if the town will authorize the selectmen to select at their discretion a school-house lot, for the purpose of placing·a school-house thereon;" at which meeting the town voted, "that the selectmen be and they are hereby authorized to select at their discretion a school-house lot and lay out the same, not exceeding in quantity forty square rods exclusive of the land occupied by the buildings, from the land of the heirs of the late Ebenezer R. Harris, heretofore selected by the town, situated on Mechanic's Square." No evidence was introduced of any previous selection by the town. But it appeared that before this meeting a building committee of the selectmen had designated a

portion of the demandant's land for a school-house lot, and offered to purchase it of her, but she refused to sell, and the committee then requested the selectmen to have this meeting called.

On the 8th of August 1853, the selectmen voted to " take the piece of land from the heirs of the late Ebenezer Harris, selected for a school-house lot, and pay two hundred and fifty dollars for the same."

On the 14th of October 1853, the selectmen of the town gave the following notice to the widow and heirs of Ebenezer Harris : " Please take notice that we, the undersigned, selectmen of Marblehead, in accordance with the instructions given us at a legal meeting of the inhabitants of the said town, will proceed to select, lay out, and assess the damages for taking a part of the lot of land, situated on Hayden's Hill, formerly so called, adjoining the lands of Samuel Manning and others, belonging to the heirs of the late Ebenezer R. Harris, at said lot, on Monday the twenty-fourth day of October inst. A. D. 1853, at two o'clock in the afternoon." At the time thus appointed, the selectmen proceeded to the land of the demandant, and staked off the lot in dispute, and tendered her the sum of two hundred and fifty dollars therefor, which she refused to accept ; and the selectmen afterwards erected a school-house thereon, which has been since occupied as such by the town.

*O. P. Lord & S. B. Ives, Jr.,* for the demandant.

*S. H. Phillips & J. H. Robinson,* for the tenants. By the Rev. Sts. *c.* 23, § 28, the inhabitants of any town " may, at any meeting called for that purpose, raise money for erecting or repairing school-houses in their respective districts," &c. &c. ; " they may also determine in what part of their respective districts such school-houses shall stand, and may choose any committee to carry into effect the provisions aforesaid." By virtue of this statute the building committee were a legal committee to designate the place for a school-house.

" Whenever a suitable place shall have been designated, by any town or school district, for the erection of a school-house, agreeably to the provisions of the twenty-third chaper of the revised

4 *

statutes, and the owner of the land shall refuse to sell the same or shall demand therefor a price which in the opinion of the selectmen is unreasonable, the said selectmen, with the approbation of the town, may proceed to select at their discretion a school-house lot, and lay out the same." *St.* 1848, *c.* 237 Under this statute the designation to be made by the town is only a general designation of the place, out of which the selectmen must select a lot. And the acceptance by the town, at a meeting duly called, of the designation made by the building committee of the selectmen, is a designation by the town. The acts of the town meeting, called by the selectmen at the request of the building committee, who had designated the place and failed to purchase, were in accordance with the article in the warrant. *Blackburn* v. *Walpole*, 9 Pick. 97. *First Parish in Sutton* v. *Cole*, 3 Pick. 244.

The selection of a lot by the selectmen out of land already designated by the town was according to the requirement of *St.* 1848, *c.* 237; and "the approbation of the town" was sufficiently given by the vote of July 30th conferring authority on the selectmen. The selectmen duly gave notice to the owners, and appraised and tendered the amount of damages, and in all respects conformed to the *St.* of 1848, *c.* 237, and the fee thereby vested in the town. *School District in Norton* v. *Copeland*, 2 Gray, 414. *Tyler* v. *Hammond*, 11 Pick. 220. That statute is a constitutional exercise of the power of the legislature to take land for public uses. *Boston & Roxbury Milldam* v. *Newman*, 12 Pick. 481. *Wayland* v. *County Commissioners*, 4 Gray, 500.

If the tenants cannot hold the premises, yet, having hitherto held them under the proceedings in question by a title which they had reason to believe good, they are entitled to compensation for their buildings and improvements. Rev. Sts. *c.* 101, §§ 19, 20.

THOMAS, J. Before any proceedings can be had under the *St.* of 1848, *c.* 237, and the *Sts.* of 1851, *c.* 186, and 1853, *c.* 149, and *c.* 347, in addition thereto, it is necessary that a suitable place shall have been designated by the town or school district

for the erection of the school-house, agreeably to the provisions of *c.* 23 of the Rev. Sts.

By § 28 of that chapter the inhabitants of the district are to determine in what part of the district the school-house shall stand. By § 30, if the school district cannot agree upon a place, the selectmen of the town are to determine where it shall be placed. But towns may carry into effect the provisions of this chapter without forming school districts. § 24. So if school districts already exist, the town may, if it sees fit, carry into effect the provisions as to school-houses at the common ex pense of the town, and in such case the town may at any legal meeting raise money and adopt all other proper measures for this purpose. §§ 28, 32. The town of Marblehead so exercised this power of building the school-houses at the common expense.

As a necessary condition precedent to the exercise of the power conferred by the *St.* of 1848, it must appear that a suitable place had been designated for the school-house, and that the owner had either refused to sell, or demanded a price which in the opinion of the selectmen was unreasonable. Nothing can be more plain and explicit than the language of the statute § 1. Such designation of a suitable place for the school-house must be made at a legal meeting and by a vote duly recorded.

There is an entire failure to show any vote by the town, designating such suitable place for the school-house in question. The only meeting in which any action was had upon the subject is that of July 30th 1853. The article in the warrant was " to see if the town will authorize the selectmen to select at their discretion a school-house lot, for the purpose of placing a school-house thereon." The vote adopted was, " that the selectmen be and they are hereby authorized to select at their discretion a school-house lot and lay out the same, not exceeding in quantity forty square rods exclusive of the land occupied by the buildings, from the land of the heirs of the late Ebenezer R. Harris, heretofore selected by the town, situated on Mechanic Square." " From land heretofore selected by the town " — when, at what meeting and by what vote, fails to appear

There is a recital of a selection — that is all. There is no evidence that such selection or designation was ever made; and it is, of course, for the tenants to show that the land was duly taken. In the absence of proof, we must presume it does not exist. The records given us of the earlier meetings show no action whatever on the subject of the lot for the school-house. The first and vital thing is wanting, that without which all the subsequent proceedings were useless ceremonies, to wit, the designation by the town of a suitable place.

If the vote of July 30th could be construed as authorizing the selectmen to designate a suitable place, it would not, we think, avail; for this is a discretion the town itself must use, and cannot delegate to its officers.

If we got beyond this point, there are other defects which would arrest our progress, and especially the insufficiency of the notice, in not stating the purpose for which the land was taken, or offering to the party a hearing.

A claim is made for betterments. Under the Rev. Sts. *c.* 101, §§ 19, 20, such claim may be made, provided the tenant holds under a title he had reason to believe good, that is, of whose defects he had no reasonable notice or warning. This does not apply to improvements made during the pendency of the controversy, and more especially where a party is taking land by force of the statute, and is bound to see that all the steps are regular. If it did, the party taking the land might in fact compel a sale of the land, or compel the party to buy the school-house or any other building erected upon it. See §§ 29, 32, 33, 34, of *c.* 101. *Judgment for the demandant.*